# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**MARSHA CARR-LAMBERT,**

    Plaintiff,

**v.**                                                            Civil Action No. 2:09-CV-61
                                                                     (BAILEY)

**GRANT COUNTY BOARD OF EDUCATION,**
**DOTTIE RIGGLEMAN, in her individual capacity,**
**JOYCE RIGGLEMAN, in her individual capacity, and**
**DAVID JONES, in his individual capacity,**

    Defendants.

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT FOR PLAINTIFF

Pending before this Court are the defendants Dottie Riggleman, Joyce Riggleman, and David Jones' Motion for Summary Judgment on Plaintiff's Amended Complaint [Doc. 226] and the defendant Grant County Board of Education's ("GCBOE") Motion for Partial Summary Judgment [Doc. 221] and Joinder in Motion of Defendants Dottie Riggleman, Joyce Riggleman, and David Jones for Summary Judgment on Plaintiff's Amended Complaint [Doc. 230]. These motions have been fully briefed and are ripe for decision.

## Background

Plaintiff Marsha Carr-Lambert filed the underlying suit asserting four causes of action: violation of her First Amendment rights; violation of her right to freedom of speech under Article III, Sections 7 and 16 of the West Virginia Constitution; wrongful discharge stemming from her trial testimony against the former Director of the South Branch Career and Technical Center ("SBCTC"); and violation of the West Virginia Wage Payment and

Collection Act ("WPCA").  Pl.'s Am. Compl. ¶¶ 50-61, [Doc. 42].

The plaintiff served as Superintendent of Grant County Schools from 1999 until June 30, 2009, when her most recent contract expired.  On December 9, 2008, the defendants first voted not to renew the plaintiff's contract.[1]  The plaintiff alleges this non-renewal was an act of retaliation against her for exercising her freedom of speech in an August 2008 trial.  The plaintiff also alleges that the defendants failed to compensate her for all wages and benefits due, a violation of the WPCA.  Specifically, the plaintiff asserts that she accrued 183 unused personal days and 7.5 unused vacation days as of June 30, 2009.

Pursuant to W.Va. Code § 18-2B-2 and her duties as Superintendent, the plaintiff served on the Administrative Council ("the Council") for the SBCTC, a three-county vocational center located in Grant County, West Virginia.  In June 2007, Robert Sisk ("Sisk") retired as Director of the SBCTC and accepted a position as Interim President of the Eastern West Virginia Community and Technical College.  In this new role, Sisk employed defendant David Jones and Tim Riggleman, who is defendant Dottie Riggleman's son and defendant Joyce Riggleman's husband.

Following Sisk's retirement, the Council received information of possible illegal conduct and instructed the new Director to conduct an informal investigation into Sisk's past business practices.  Upon these findings, the Council then voted to conduct an independent audit of the SBCTC's records and financial affairs.  The Council also decided the plaintiff would oversee the investigation.  The plaintiff asserts that she became the target of

---

[1] The evidence provides that the defendants voted on more than one occasion not to rehire the plaintiff as Superintendent.  Each contract that was presented before the GCBOE members for voting stipulated new or different terms and conditions.

accusations, innuendo, and harassment once news of the independent audit became public, and that she was threatened with legal action if her investigatory efforts did not cease.

In March 2008, the Council referred the audit report to the Grant County prosecutor who subsequently charged Sisk with a violation of W.Va. Code § 61-3C-7(a) and petit larceny. During the August 2008 trial, the plaintiff testified on behalf of the prosecution. Sisk was found not guilty of the charges.

In August 2009, after the expiration of her contract, the plaintiff applied for at least one open position for which she asserts she was the only qualified applicant. The plaintiff alleges that the defendants interviewed her on September 2, 2009, but that they subsequently rescinded that opening.

## Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment for the moving party is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-25

(1986); ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson***, 477 U.S. at 250.

In applying this standard, the Court must review all the evidence "in the light most favorable to the nonmoving party." ***Celotex Corp.***, 477 U.S. at 322-23.  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  ***Anderson***, 477 U.S. at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." ***Matsushita***, 475 U.S. at 587.

## Discussion

### Claim 1: Federal Free Speech

The individually-named defendants initially contend that they should be entitled to qualified immunity from the plaintiff's 42 U.S.C. § 1983 claim.  It is undisputed that a government official may be shielded from liability for his or her conduct even if a plaintiff's rights were violated, unless that conduct violated "clearly established statutory or constitutional rights of which a reasonable person" in that official's position would have known.  ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982).  However, as these elements have not been fully demonstrated and will require additional findings, this Court is not prepared to make any determinations regarding qualified immunity for the individually-named defendants at this time.

To establish a First Amendment retaliation claim, the plaintiff must demonstrate:

1. That she engaged in a protected expression regarding a matter of public concern;

2. That her interest in First Amendment expression outweighs her employer's interest in efficient operation of the workplace;

3. That she was deprived of some valuable benefit; and

4. That a causal relationship exists between her protected expression on a matter of public concern and the loss of the benefit.[2]

***Peters v. Jenney***, 327 F.3d 307, 322-23 (4th Cir. 2003).

Upon such demonstration, the defendants may defeat the claim by showing by a preponderance of the evidence that the protected expression actually disrupted or interfered with governmental duties or efficiency. ***Goldstein v. Chestnut Ridge Volunteer Fire Co.***, 218 F.3d 337, 356 (4th Cir. 2000); ***Robinson v. Balog***, 160 F.3d 183, 189 (4th Cir. 1998).

The defendants argue that the plaintiff has made no evidentiary showings and cannot establish the elements of her claim. Primarily, the defendants contend that the plaintiff's testimony was made pursuant to her responsibilities as Superintendent and, therefore, is not a protected expression. However, the Court in ***Whitfield v. Chartiers Valley Sch. Dist.***, 707 F.Supp.2d 561 (W.D.Pa. 2010), recently recognized "the need to protect truthful testimony in court" and a ***Garcetti*** exception: "when a government

---

[2] Whereas the defendants relied on the four-prong test set forth in ***Peters v. Jenney***, 327 F.3d 307 (4th Cir. 2003), the plaintiff relied on the three-prong test set forth in ***McVey v. Stacey***, 157 F.3d 271 (4th Cir. 1998). For these purposes, this Court determined each test will reach the same result and chose to use the newer test (***Peters***).

5

employee testifies truthfully, she is not simply performing her job duties, [but] rather . . . acting as a citizen." *Id.* at 575 (quoting **Garcetti v. Ceballos**, 547 U.S. 410, 423 (2006)). Further, a statement disclosing actual or potential wrongdoing or breach of public trust constitutes speech on a matter of public concern. **Robinson,** 160 F.3d at 188; **McVey v. Stacey**, 157 F.3d 271, 280-81 (4th Cir. 1998).

This Court is not prepared to make a determination as to whether the plaintiff spoke as an employee or as a citizen, but does acknowledge the possibility that her testimony may be considered a protected expression. As to the remaining elements, this Court finds that the plaintiff has met her burden to overcome a motion under Rule 56(c).

The plaintiff, as part of the Administrative Council, was investigating possible illegal conduct at the SBCTC. Using the balancing test set forth in **Pickering v. Bd. of Educ.**, 319 U.S. 563 (1968), the plaintiff's interest in disclosing illegal conduct that would affect three counties may outweigh the defendants' interest in an efficient operation of the workplace.

Additionally, the plaintiff demonstrates that she served as Superintendent for ten years, a position for which she earned a salary of approximately $75,000 and benefits by 2009. Based on the evidence presented, a reasonable jury may find that (1) the nonrenewal of her contract was a deprivation of valuable benefits and (2) a causal relationship exists between the plaintiff's Sisk trial testimony and such a deprivation.

Further reviewing the claim under this framework, this Court finds that, if proven, the plaintiff's interest in that expression would be compelling, and the defendants must have a strong showing by a preponderance of the evidence of actual disruption of legitimate

6

governmental functions to overcome the claim. *Goldstein*, 218 F.3d at 356; *McVey*, 157 F.3d at 280-81. At this point, the defendants have not presented a strong showing that the efficiency of the workplace was *actually* disrupted by the plaintiff's testimony.

For these reasons, the motions for summary judgment on the federal free speech claim are **DENIED**.

## Claim 2: West Virginia Free Speech

Because the plaintiff again must prove the elements of a free speech retaliation claim, as analyzed in the First Amendment claim, those elements will not be readdressed.

Also similar to the analysis in the first claim and pursuant to W.Va. Code § 29-12A-5(b), the individually-named defendants may be entitled to qualified immunity unless:

1. His/her acts or omissions were manifestly outside the scope of employment or official responsibilities;

2. His/her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

3. Liability is expressly imposed upon the employee by a provision of this Code.

W.Va. Code § 29-12A-5(b) (1986).

Nonetheless, a reasonable jury could find that the defendants may have performed several actions, aside from their voting to not renew the contract, that fall outside the scope of their employment or official duties or were performed with malicious purpose, in bad faith, or in a wanton or reckless manner. For example, the plaintiff asserts:

- That defendant Joyce Riggleman asked to meet privately with GCBOE President Jerry Ours to discuss the possibility of getting rid of a superintendent;

- That defendant Dottie Riggleman contacted GCBOE Treasurer Tony Oates about the truth of his testimony and later stated that she "could not support somebody that had done what [the plaintiff] had done at South Branch;" and

- That Tim Riggleman also approached Tony Oates and stated that he would "hate to see [Tony] lose his job" and that the plaintiff "did not need to know" about the conversation.

As a result, the defendants are not entitled to qualified immunity at this time, and their motions for summary judgment on the state free speech claim are **DENIED**.

### Claim 3: Wrongful Discharge

In addition to the elements needed to prove the first two claims, to prove a wrongful or retaliatory discharge claim, the plaintiff also must show that her protected expression was a substantial or motivating factor–not the only precipitating factor–for the non-renewal of her contract. ***McClung v. Marion County Comm'n***, 178 W.Va. 444, 449, 360 S.E.2d 221, 227 (1987).

The defendants may defeat the claim by showing by a preponderance of the evidence that the same decision as to the plaintiff's employment would have been reached even in the absence of the protected conduct. ***Alderman v. Pocahantas County Bd. of Educ.***, 223 W.Va. 431, 434, 675 S.E.2d 907, 911 (2009).

This Court finds that the plaintiff has met her burden, but that the defendants have not demonstrated by a preponderance of the evidence that the same decision as to the plaintiff's employment would have been reached, barring her testimony. For instance, accepting the evidence as true, the plaintiff received high marks throughout her first nine years as Superintendent; yet, during her last year as Superintendent, she was not evaluated–a violation of W.Va. Code § 18-4-6(a) ("At least annually, the county board shall evaluate the performance of the county superintendent")–so as to be put on sufficient notice that her performance was unsatisfactory. In the absence of such an evaluation, this Court finds the defendants have thus far failed to set forth evidence demonstrating their reasons in support of the adverse employment decision. Although Dottie Riggleman alleges that she has voted against the plaintiff's contract renewal since her election to the GCBOE, the plaintiff asserts Dottie always voted for her renewal, with the exception of the 2004 vote. Accordingly, this Court finds a jury certainly could find the plaintiff's protected speech served as a substantial or motivating factor in the Board's decision not to renew her contract.

Furthermore, while the defendants were not obligated to renew the plaintiff's contract, precedent is still unsettled as to whether the defendants were obligated to allow the plaintiff to transfer to another open position for which she was qualified and had seniority. W.Va. Code § 18-4-1(a) states, in relevant part:

(a) At the expiration of the term or terms for which he or she shall have been appointed, each county superintendent shall be eligible for reappointment for additional terms of not less than one, nor more than four years: *Provided, That at the expiration of his or her term or*

> *terms of service the county superintendent may transfer to any teaching position in the county for which he or she is qualified and has seniority, unless dismissed for statutory reasons.*

W.Va. Code § 18-4-1(a) (2003) (emphasis added).

This Court finds that no determination can be made without additional factual development.

For these reasons, the defendants' motions for summary judgment on the wrongful discharge claim are **DENIED**.

### Claim 4: Wage Payment and Collection Act

The Wage Payment and Collection Act ("WPCA") was designed "to protect working people and assist them in the collection of compensation wrongly withheld," such as wages and fringe benefits. W.Va. Code § 21-5 (1987). W.Va. Code § 21-5-1(l) states, in relevant part:

> (l) "The term 'fringe benefits' means any benefit provided an employee or group of employees by an employer, or which is required by law, and includes *regular vacation*, graduated vacation, floating vacation, holidays, sick leave, *personal leave* . . ."

W.Va. Code § 21-5-1(l) (1987) (emphasis added).

Firms and corporations, as well as officers who "knowingly permit" a violation, are liable under W.Va. Code § 21-5-4(e). W.Va. Code § 21-5-1(h) (1987).

It is undisputed that the plaintiff was an employee of the defendant GCBOE. The individually-named defendants, however, assert that they should not be held liable for the fourth claim as the plaintiff was not an employee of the three individuals. Nevertheless, this

10

Court finds the WPCA applicable to the individually-named defendants as they were officers of the GCBOE that employed the plaintiff. As officers, the individual defendants oversaw the execution of her contract, the payment of her salary, and the allocation of her fringe benefits. Consequently, the WPCA "places liability directly upon a corporate officer who knowingly permits the corporation to violate the Act." ***Mullins v. Venable***, 171 W.Va. 92, 96, 297 S.E.2d 866, 871 (1982) (citing W.Va. Code §§ 21-5-1 to 21-5-16).

The plaintiff asserts 7.5 vacation days and 183 personal days are owed to her, as documented by her final payroll stub and provided in defendant GCBOE's payroll records submitted during discovery. Defendant GCBOE contends that the plaintiff's contract subjects her to "any and all existing state laws, West Virginia Board of Education policies, County Board of Education policies and such laws, policies, rules and regulations as may hereinafter be enacted or adopted." Memo. Def.'s Mot. Part. Summ. J. Ex. B, at 2, [Doc. 222]. In particular, defendant GCBOE maintains that two relevant GCBOE policies would prohibit compensation for unused benefits. First, Policy No. 3433 provides that, "upon termination of employment, accumulated vacation leave may be used to receive a lump sum payment based upon the employee's daily rate of pay for up to a maximum of thirty (30) days." Memo. Def.'s Mot. Part. Summ. J. Ex. C, at 4, [Doc. 222]. In contrast to the plaintiff's evidence, the defendants contend that the plaintiff's personal records reflect, in fact, that she would have no remaining vacation time for which compensation is owed. Second, Policy No. 3431 makes no reference as to compensation for unused personal leave. The defendants contend that because this policy is silent as to compensation for unused time, unlike the vacation policy, it is unambiguous and the plaintiff should not be entitled to recover.

In general, "terms of employment must be *express* and *specific* so that employees understand the amount, if any, owed to them upon separation." **Meadows v. Wal-mart Stores, Inc**., 207 W.Va. 203, 206, 530 S.E.2d 676, 679 (1999) (emphasis added). Any ambiguities in an employer-employee agreement must be construed in favor of the employee. **Ingram v. City of Princeton**, 208 W.Va. 352, 357, 540 S.E.2d 569, 574 (2000) (citing **Meadows**).

This Court finds that the plaintiff is entitled to recover for unused vacation days. The defendants are estopped from questioning the written record of fringe benefits owed to the employee found on the paystub. *See* **Isaacs v. Bonner**, 225 W.Va. 460, 694 S.E.2d 302 (2010) (explaining that the employee is entitled to an accurate paystub). W.Va. Code § 21-5-4(e) provides that "a person, firm or corporation shall, in addition to the amount which was unpaid when due, be liable to the employee for three times that unpaid amount as liquidated damages." W.Va. Code § 21-5-4(e) (2006). Therefore, the plaintiff is entitled to compensation for a total of 30 vacation days.

Additionally, this Court has determined that Policy No. 3431 is silent and, therefore, not clear, express, and specific regarding compensation for unused personal leave. Due to this ambiguity, the plaintiff is entitled to recover for unused personal days. However, there is still a genuine issue of material fact as to the number of days owed. The Court cannot determine, for instance, if the paystub's three "personal leave" line items are to be combined (to equal 183 days) or if the bottom line is all-inclusive (to equal only 179 days). Therefore, the final number of days will be determined by the jury.

For these reasons, summary judgment on this claim is **GRANTED** in favor of the plaintiff.

**Conclusion**

Accordingly, it is the opinion of this Court that the defendants' motions for summary judgment **[Docs. 221, 226, and 230]** should be **DENIED** and that summary judgment on the Wage Payment and Collection Act claim **[Doc. 236]** should be **GRANTED** for the plaintiff.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: August 11, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE